UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

HENRY YOUNG,  )
    Plaintiff,  )
      )
    vs.  )        1:08-cv-1521-RLY-DML
      )
CELLCO PARTNERSHIP d/b/a  )
VERIZON WIRELESS,  )
    Defendant.  )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Henry Young ("Plaintiff"), is African-American and worked as a Business Sales Manager ("BSM") for defendant, Cellco Partnership d/b/a Verizon Wireless ("Verizon"), from February 16, 2004, until May 2, 2007. Following his termination, Plaintiff brought the present suit against Verizon, alleging that his termination was in violation of the Americans With Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"). On March 16, 2010, Verizon filed the instant motion for summary judgment. Thereafter, Plaintiff agreed to dismiss all of his claims against Verizon, except for his Title VII and Section 1981 claims of racial discrimination based upon his termination. This entry therefore only addresses Verizon's motion with respect to those claims. For the reasons set forth below, the court **DENIES** the motion.

Under the direct method, the plaintiff may show, either through direct or

1

circumstantial evidence, that the employer's decision to take the adverse job action was motivated by an impermissible purpose such as race. *Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007); *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Examples of circumstantial evidence of intentional discrimination include: "'(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.'" *Henry*, 507 F.3d at 566 (quoting *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)).

Plaintiff alleges that the decision of his supervisor, Amy Lloyd ("Lloyd"), to terminate his employment with Verizon was racially motivated. Plaintiff supports his claim based on his contention that the Caucasian BSMs under Lloyd's supervision were treated "systematically better" than Plaintiff.

The evidence reflects that Plaintiff was the only African American BSM under Lloyd's supervision at all relevant times. (Affidavit of Henry Young ¶ 10). On May 6, 2006, shortly after Lloyd became his direct supervisor, Plaintiff received a Performance Improvement Plan ("PIP") and a verbal warning, because his "scorecard" was below target. (Deposition of Henry Young ("Plaintiff Dep.") Ex. 8). Specifically, Lloyd expected that all BSMs attain a minimum "Gross Add Quota" ("GAQ") of 80%, and

Plaintiff had only achieved a GAQ of 74%. (*Id.*). Lloyd defined "Gross Add Quota" as "new lines of service (both voice and non-voice)." (Second Declaration of Amy Lloyd ("Lloyd Second Dec.") ¶ 15). The PIP stated, "Failure to achieve Scorecard target for June will result in a written warning." (Plaintiff Dep. Ex. 8).

The following month, Plaintiff did not meet his GAQ goal of 80%, and thus, received a written warning. (Plaintiff Dep. Ex. 9). The PIP stated, "Failure to meet July will result [sic] final written warning. Two consecutive months of meeting the minimum objective will result in you being removed from this [PIP]." (*Id.*).

In August, Plaintiff, again "fail[ed] to achieve expected performance standards of a [BSM]." (Plaintiff Dep. Ex. 10). For this, and for other performance failures, including "[f]ailure to respond to requests in a timely manner and lack of follow-up," he received a final written warning. (*Id.*). The final written warning identified the abovementioned incidents, as well as others discussed in their weekly meetings, and informed Plaintiff that: "Failure to significantly improve behavior will result in termination." (*Id.*).

Following a six-month leave of absence, Plaintiff returned to work on February 28, 2007. (Declaration of Gwyneth DeLaine-Poole ¶ 5). According to Lloyd, his job performance did not improve. Therefore, on May 2, 2007, after receiving Human Resources' approval, Lloyd and Jacquelyn Underwood, Director of Human Relations, met with Plaintiff and informed him that his employment was terminated due to sales performance. (Plaintiff Dep. at 255, 258; Deposition of Amy Lloyd ("Lloyd Dep.") at 18; Declaration of Jacquelyn Underwood ¶¶ 35-36).

The crux of Plaintiff's case is the GAQ scores of his Caucasian BSM counterparts. Plaintiff contends that it was Lloyd's policy to place a BSM on a PIP for failing to make 80% of "goal." Plaintiff further contends, based upon the Key Performance Indicator Reports ("KPI Reports") he received in discovery, that Jason Fuller, John Wisnewski, Tim LaCross, and Marion Nolan (Plaintiff's Caucasian BSM comparators) failed to achieve 80% of "goal," but, unlike Plaintiff, either were not disciplined, or were not disciplined as harshly as Plaintiff. (*See, e.g.*, Lloyd Dep. Exs. 5-10).

Although Verizon stated as a material fact that one of the requirements of a BSM was to ensure that his or her sales force met their KPIs, (Declaration of Amy Lloyd ¶ 12), Lloyd testified that for the months of May and June 2006, she did not use these numbers to measure the GAQ for a BSM's scorecard performance and discipline purposes. Instead, for the months of May and June 2006, Lloyd measured the GAQ for scorecard performance and discipline purposes as "new lines of service." (Lloyd Second Dec. ¶¶ 15-18).

The evidence in this case is perplexing. LLoyd does not explain how she determined the GAQ (i.e., the new lines of service) for the Plaintiff or for the Plaintiff's comparators for the months of May and June 2006, or for any of the additional months up to and including May 2007. (Contrary to Verizon's argument, the GAQs of Plaintiff and of his comparators from July 2006 through May 2007 are relevant). Indeed, the record contains no competent evidence from which to compare the GAQ of Plaintiff with the GAQ of Plaintiff's comparators during the relevant time period (May 2006-May 2007).

4

Accordingly, the court is unable to determine, given the present evidentiary record, whether Plaintiff's comparators were treated "systematically better" than he. Because this evidence is material to this case, and because the court must view the facts in the light most favorable to the Plaintiff, the court must **DENY** Verizon's motion for summary judgment (Docket # 62) at this time.

**SO ORDERED** this 22nd day of September 2010.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Bonnie L. Martin
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
bonnie.martin@odnss.com

Brandon M. Shelton
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.
brandon.shelton@ogletreedeakins.com

Howard L. Stevenson
COLEMAN STEVENSON & MONTEL, LLP
hstevenson@csmlegal.com

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com